# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOPIE SILVESTRE,<br><br>    Plaintiff,<br><br>    vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No. 2:17-CV-0539-CMK<br><br><br>MEMORANDUM OPINION AND ORDER |

        Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 16) and defendant's cross-motion for summary judgment (Doc. 17).

/ / /

/ / /

/ / /

## I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on October 1, 2013. See CAR 12.[1] In the application, plaintiff claims that disability began on February 4, 2007. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on July 7, 2016, before Administrative Law Judge ("ALJ") Curtis Renoe. See id. In an August 2, 2016, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): fibromyalgia, degenerative disc disease, stage III chronic kidney disease, IgA nephropathy, hypertension, and undifferentiated connective tissue disease;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: sedentary work;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, the claimant can perform her past relevant work; alternatively, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 14-24.

After the Appeals Council declined review on January 6, 2017, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to

---

[1] Citations are to the Certified Administrative Record lodged on July 24, 2017 (Doc. 11).

support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III. DISCUSSION

In her motion for summary judgment, plaintiff argues that the ALJ failed to articulate sufficient reasons for rejecting the opinions of treating physicians Drs. Juozokas and Hojiati and examining psychologist Dr. Canty.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

**A.  Dr. Canty**

As to Dr. Canty, the ALJ stated:

> Consultative psychiatrist, Timothy Canty, M.D., opined that the claimant could complete simple to moderately complex jobs, would get along well with coworkers and supervisors and could maintain attendance (Ex. 1F). Dr. Canty's opinion is given substantial weight because it is based upon a psychological evaluation and it is consistent with the medical evidence, which revealed minimal psychological complaints, normal mental status evaluations, and no significant treatment.

4

> However, Dr. Canty further opined that the claimant could perform non-public jobs (Ex. 1F). This portion of Dr. Canty's opinion is given little weight, as he appeared to rely quite heavily on the claimant's subjective complaints.

CAR 20.

Plaintiff argues that the ALJ cannot discount a mental health professional's opinion by stating that it is based on subjective allegations because, by nature, such professionals necessarily base their opinions on what their patients tell them. Defendant argues that any error is harmless.

The court agrees with defendant. The Ninth Circuit has applied harmless error analysis in social security cases in a number of contexts. For example, in Stout v. Commissioner of Social Security, 454 F.3d 1050 (9th Cir. 2006), the court stated that the ALJ's failure to consider uncontradicted lay witness testimony could only be considered harmless ". . . if no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Id. at 1056; see also Robbins v. Social Security Administration, 466 F.3d 880, 885 (9th Cir. 2006) (citing Stout, 454 F.3d at 1056). Similarly, in Batson v. Commissioner of Social Security, 359 F.3d 1190 (9th Cir. 2004), the court applied harmless error analysis to the ALJ's failure to properly credit the claimant's testimony. Specifically, the court held:

> However, in light of all the other reasons given by the ALJ for Batson's lack of credibility and his residual functional capacity, and in light of the objective medical evidence on which the ALJ relied there was substantial evidence supporting the ALJ's decision. Any error the ALJ may have committed in assuming that Batson was sitting while watching television, to the extent that this bore on an assessment of ability to work, was in our view harmless and does not negate the validity of the ALJ's ultimate conclusion that Batson's testimony was not credible.

Id. at 1197 (citing Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990)).

In Curry, the Ninth Circuit applied the harmless error rule to the ALJ's error with respect to the claimant's age and education. The Ninth Circuit also considered harmless error in the context of the ALJ's failure to provide legally sufficient reasons supported by the record for rejecting a medical opinion. See Widmark v. Barnhart, 454 F.3d 1063, 1069 n.4 (9th Cir. 2006).

The harmless error standard was applied in Carmickle v. Commissioner, 533 F.3d 1155 (9th Cir. 2008), to the ALJ's analysis of a claimant's credibility. Citing Batson, the court stated: "Because we conclude that . . . the ALJ's reasons supporting his adverse credibility finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless error." See id. at 1162. The court articulated the difference between harmless error standards set forth in Stout and Batson as follows:

> . . . [T]he relevant inquiry [under the Batson standard] is not whether the ALJ would have made a different decision absent any error. . . it is whether the ALJ's decision remains legally valid, despite such error. In Batson, we concluded that the ALJ erred in relying on one of several reasons in support of an adverse credibility determination, but that such error did not affect the ALJ's decision, and therefore was harmless, because the ALJ's remaining reasons *and ultimate credibility determination* were adequately supported by substantial evidence in the record. We never considered what the ALJ would do if directed to reassess credibility on remand – we focused on whether the error impacted the *validity* of the ALJ's decision. Likewise, in Stout, after surveying our precedent applying harmless error on social security cases, we concluded that "in each case, the ALJ's error . . . was inconsequential to the *ultimate nondisability determination*."
>
> Our specific holding in Stout does require the court to consider whether the ALJ would have made a different decision, but significantly, in that case the ALJ failed to provide *any reasons* for rejecting the evidence at issue. There was simply nothing in the record for the court to review to determine whether the ALJ's decision was adequately supported.

Carmickle, 533 F.3d at 1162-63 (emphasis in original; citations omitted).

Thus, where the ALJ's errs in not providing any reasons supporting a particular determination (i.e., by failing to consider lay witness testimony), the Stout standard applies and the error is harmless if no reasonable ALJ could have reached a different conclusion had the error not occurred. Otherwise, where the ALJ provides analysis but some part of that analysis is flawed (i.e., some but not all of the reasons given for rejecting a claimant's credibility are either legally insufficient or unsupported by the record), the Batson standard applies and any error is harmless if it is inconsequential to the ultimate decision because the ALJ's disability determination nonetheless remains valid.

The <u>Stout</u> standard is inapplicable because the ALJ did in fact provide a reason for rejecting Dr. Canty's opinions. The court applies the <u>Batson</u> standard in this case because, while the ALJ provided reasons for rejecting Dr. Canty's opinions, the court will for the moment presume they are flawed. Applying this standard, the court concludes that any error is inconsequential to the ALJ's determination that plaintiff is not disabled. Had the ALJ accepted Dr. Canty's limitation to non-public jobs, the ultimate disability determination remains the same because the ALJ concluded that plaintiff can perform her past relevant work as an accounting clerk, a position that the Dictionary of Occupational Titles describes as requiring no significant public interaction. <u>See</u> DOT #216.482-010.

**B.    Drs. Juozokas and Hojiati**

As to Drs. Juozokas and Hojiati, the ALJ stated:

> Treating physician, Mehrnaz Hojiati opined that the claimant could not perform full-time work, could occasionally lift and/or carry less than ten pounds, could sit for up to two hours in an eight-hour day, could stand and/or walk up to thirty minutes in an eight-hour day, and would require frequent position changes (Ex. 14F; 16F/15; 17F). Dr. Hojiati then opined that the claimant must lie down for at least two hours in an eight-hour day and could manipulate and/or grasp with the bilateral upper extremities for up to three hours per day (Ex. 22F).
>
> Treating physician, Alison Juozokas, M.D., opined that the claimant could not perform full-time work, could occasionally lift and/or carry up to ten pounds, could not lift, push, perform housework, cook, or clean, could sit for up to forty minutes at a time, could walk approximately two blocks, and could stand for up to forty minutes at one time (Ex. 20F). Dr. Juozokas then opined that the claimant could sit for up to three hours in an eight-hour day and could stand and/or walk for one hour in an eight-hour day (Ex. 21F).
>
>         \* \* \*
>
> In this case, the opinions of Drs. Hojiati and Juozokas are given little weight because they appear to rely heavily on the claimant's subjective complaints and their opinions are unsupported by the objective medical evidence, which revealed generally benign examinations.

CAR 19-20.

/ / /

Plaintiff argues:

> In this case, the ALJ without further explanation rejected both treating doctors [sic] reports with the claim that they had relied heavily on Plaintiff's subjective complaints. Tr. 20. While fibromyalgia and its resulting pain are not prone to objective findings, both doctors reported that they did rely on a variety of objective findings to support their conclusions. Dr. Hojiati noted the results of the MRIs observed tenderness and swelling, diffuse tender points and observed painful movement of Plaintiff's shoulders supported the limitations. Tr. 1379, 1429, 1449. This is particularly important, as Dr. Hojiati is a rheumatologist and practiced in the observation and diagnose fibromyalgia. 20 C.F.R. §404.1527(c)(5) (provides more weight to specialists). Dr. Juozokas based her limitations on blood tests, spine MRIs, observed edema, observed pain with abduction of the right shoulder, positive impingement signs, fibromyalgia tender points on exam and a widespread pain inventory scale. Tr. 1499, 619, 639, 641.

Dr. Juozokas' opinions are set forth in a one-page "Questionnaire" dated June 2, 2015, see CAR 1498 (Exhibit 20F), and two-page "Questionnaire" dated June 12, 2015, see id. at 1499-1500 (Exhibit 21F). In the June 2, 2015, document, Dr. Juozokas cites "laboratory findings that suggest lupus" as support for her opinions, though the doctor does not include lupus as an impairment listed elsewhere on the same form. Id. at 1498. On the June 12, 2015, document, Dr. Juozokas cites a spine MRI, a diagnosis of degenerative disc disease, "blood tests," as well as "tender points on exam" and "widespread pain inventory scale – consistent w/ fibromyalgia" to support her opinions. Id. at 1499.

Dr. Hojiati's opinions are contained in a one-page "Questionnaire" dated March 9, 2016, found at three separate exhibits in the record, see id. at 1348 (Exhibit 14F), id. at 1377 (Exhibit 16F, p. 15), and id. at 1379 (Exhibit 17F), and a one-page "Questionnaire" dated June 27, 2016, see id. at 1502 (Exhibit 22F). In the March 9, 2016, form, the doctor cites joint space narrowing, degenerative changes, "tender to touch wrists & hands," and "painful arc of shoulders" as support for his opinions. Id. at 1502. In the June 27, 2016, document, the doctor does not reference any objective findings in support of his opinion that plaintiff must lie down at least two hours in an eight-hour workday. See id.

/ / /

The court finds that the ALJ properly rejected these opinions as conclusory or, as the ALJ put it, "unsupported by the objective medical evidence, which revealed generally benign examinations," instead appearing to "rely heavily on the claimant's subjective complaints."[2] As to Dr. Hojiati, a review of the reports of his opinions reflects that they are conclusory and unsupported. While the doctor references in the March 9, 2016, form, the doctor cites joint space narrowing, degenerative changes, "tender to touch wrists & hands," and "painful arc of shoulders" in the March 9, 2016, document, CAR at 1502, Dr. Hojiati does not explain how any of those particular observations relates to a specific opinion. Morever, though the evidence cited by the doctor is indicative of impairments, it is not indicative of work-related limitations. The June 27, 2016, document does not reference any objective evidence. See id.

Dr Juozokas' opinion is also conclusory. The doctor's June 2, 2015, opinion notes unspecified findings that "suggest lupus," where lupus is not listed on the same form as an impairment, see id. at 1498, is speculative at best. And, as with Dr. Hojiati's references, the MRI, diagnosis of degenerative disc disease, blood tests, and tender points and "widespread pain inventory scale – consistent w/ fibromyalgia," id. at 1499, are indications of impairments and not limitations on the ability to perform activities associated with work.

On this record, the court concludes that the ALJ's findings as to Drs. Hojiati and Juozokas are supported by proper legal analysis and substantial evidence.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[2] Plaintiff appears to read this particular phrase to mean that "subjective complaints" refers to subjective complaints of pain which, as plaintiff notes, are not typically traced to an observable cause in fibromyalgia cases. The court reads this phrase to reference plaintiff's subjective complaints of limitations associated with her pain symptoms.

## IV. CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 16) is denied;
2. Defendant's cross-motion for summary judgment (Doc. 17) is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED: August 27, 2018

*Craig M. Kellison*
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE